Filed 12/30/13  P. v. Richardson CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>BRETT LEE RICHARDSON,<br><br>　　　Defendant and Appellant. | A135298<br><br>(Contra Costa County<br>Super. Ct. No. 051006915) |

　　　A jury found defendant Brett Lee Richardson guilty as charged of first degree murder (Pen. Code, § 187), discharging a firearm from a vehicle (Pen. Code, former § 12034), and five counts of attempted robbery (Pen. Code, §§ 211, 664).  Various firearm-related enhancements were found true by the jury, and one prior prison term enhancement was found true by the court. Defendant was sentenced to state prison for an aggregate term of 52 years and six months to life.

　　　On this timely appeal, the sole claim of error advanced by defendant is that the trial court erred in denying his motion to suppress evidence of custodial statements made following his arrest for an unrelated matter. [1]  That motion was made on two grounds. The first was that the statements were elicited in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 because defendant did not expressly waive those rights prior to answering questions.  The second was that "The defendant's confession was involuntary."

---

[1] In his opening brief, defendant also pressed a claim of sentencing error. However, after considering the Attorney General's response, defendant withdrew this claim.

Defendant argued that he had been the victim of coercive conduct by law enforcement in that the interrogating officers had made numerous false statements about the strength and the nature of the evidence linking defendant to the murder. Defendant has chosen not to renew the *Miranda* aspect of his motion, contending only that his statements were involuntary.

Defendant's motion was the subject of a two-day hearing. The court heard testimony from Officer Deplitch who interviewed defendant,[2] and reviewed an audiotape and transcript of the interview.[3] Following that, the court denied defendant's motion in an exhaustive ruling covering both law and fact that occupies more than 15 pages of reporter's transcript.

With respect to the first ground of defendant's motion, the court concluded that defendant "did in fact understand his *Miranda* rights" and "waived his . . . *Miranda* rights by his conduct on the date of the interview." Defendant has elected not to contest this ruling on appeal.

The second ground of defendant's motion was also rejected: "I do find under the totality of the circumstances that the officers' false claims regarding the evidence . . . would not have likely induced a statement that was involuntary or unreliable. In other words, the type of additional information they provided beyond what they truly had in the way of evidence was not likely to cause an innocent man to falsely confess to having committed the crimes."

"I listened carefully to the argument that it was the number and repetition of the false statements . . . that would render the defendant's confession involuntary. . . . I don't find that repetition was likely to induce a false or unreliable confession.

[2] The court also heard testimony from Richmond Police Sergeant Peixoto, who interviewed defendant shortly after he was apprehended and had been booked into the Richmond jail; this was approximately a week prior to defendant being interviewed by Officer Deplitch. Peixoto's testimony need not be summarized because it is not germane to the narrowed issue defendant renews on this appeal.

[3] The transcript of defendant's interview is a part of the record on appeal; the audiotape is not.

"Nor do I find . . . the number of false statements or ruses used here and the frequency with which they were repeated to be materially different to other cases where the Courts have found confessions voluntary. For example, in *People v. Thompson*, 50 Cal.3d 134, the defendant was repeatedly told the false information that his car had been connected to the scene of the victim's death by tire tracks and soil samples, that they had found physical evidence linked to the victim in the defendant's car, and third, that they had found rope fibers in the defendant's bedroom that obviously were connected with the murder in that case. I don't find the type of deception used here in light of what the officers actually knew about the defendant's participation to be significantly different from those [decisions] that approved the voluntariness of a confession."

Defendant contends that his confession "was involuntary because it was the product of implied promises of leniency." This is a different approach from the grounds of the motion that was made and decided in the trial court. "When a party does not raise an argument at trial, he may not do so on appeal." (*People v. Clark* (1993) 5 Cal.4th 950, 988, fn. 13.) This principle applies to precisely the situation here. (See *People v. Ray* (1996) 13 Cal.4th 313, 339 [trial motion to suppress on *Miranda* not allowed on appeal to include claim of improper inducement]; *People v. Benson* (1990) 52 Cal.3d 754, 782, fn. 5 [leniency attack on statement not allowed on appeal to expand to include "other aspects of the interrogation (e.g., 'psychological coercion,' 'deception,' and 'threats').".].) From our review of the record, it appears that the word "leniency" was never used in defendant's moving papers or uttered at the two-day hearing before the trial court.

But even if the issue had been preserved for appeal, it would not compel reversal.

" 'It is well settled that a confession is involuntary and therefore inadmissible if it was elicited by any promise of benefit or leniency whether express or implied. [Citations.] However, mere advice or exhortation by the police that it would be better for the accused to tell the truth when unaccompanied by either a threat or a promise does not render a subsequent confession involuntary. . . . Thus, "[w]hen the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct," the subsequent statement will not be considered involuntarily made.

3

[Citation.] On the other hand, "if . . . the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible . . . ." ' [Citation.]" (*People v. Holloway* (2004) 33 Cal.4th 96, 115.)

Defendant identifies a number of statements he claims will satisfy this standard. His effort fails.

The trial court timed the audiotape of the interview at "one hour and 36 minutes." The transcript of the interview has 75 pages. But most of the handful of statements seized upon by defendant have no express or implied promise of leniency. Instead, they are more akin to the officers' (admittedly exaggerated) estimation of the case defendant was facing (e.g., "I don't think you're gonna walk away from this," "with as much evidence as we have on you you're gonna go away on this unless you provide us with an explanation"), but rather are bland exhortations (e.g., "now's the time to get out from underneath this," "Now is the time for you to explain that you didn't know").

In its ruling, the trial court took note of defendant's past dealings with law enforcement: "Mr. Richardson was age 30 at the time of the statements; that he did have very extensive experience with the criminal justice system based on his rap sheet, which . . . does reflect a history of arrests and convictions . . . since 1994. I count at least 17 arrests, nine felony convictions, one or more trips to state prison, multiple probation violations and parole revocations, each of which would likely result in another arrest." Corroboration for this conclusion may be found in the court's finding that defendant was able to recite much of *Miranda* from memory. Additional support is provided by the court's conclusion that defendant's familiarity with *Miranda* permitted his implied waiver.

Had the trial court been required to resolve the issue, it appears unlikely that the court would have concluded a person with this experience would be susceptible to an unuttered hope of leniency. Neither of the interviewing officers made any promise of leniency, or offered to seek more favorable treatment from the District Attorney. An

objective reading of the transcript shows that nothing concrete was ever mentioned or offered. As an experienced veteran of criminal investigation, one would expect defendant to seize on any hint of proffered leniency and nail down the particulars. Yet none of statements cited by defendant had that effect on defendant. Instead, defendant continued parrying with the officers in an obvious effort to discover how much evidence they had against him. (See *People v. Williams* (2010) 49 Cal.4th 405, 442.) In the circumstances, the trial probably would have ruled that defendant was no more responsive to possible leniency than he was to deception.

Having made an independent review of the record, including what is undisputed (see *People v. Vance* (2010) 188 Cal.App.4th 1182, 1211), we cannot conclude that defendant's will was overborne by thoughts of leniency. With the benefit of that review, we see no basis for disagreeing with the trial court's conclusion that defendant's statement "was made voluntarily based on his own decision that it would be in his best interest to do so."

The judgment of conviction is affirmed.


_____
Richman, J.


We concur:


_____
Kline, P.J.


_____
Haerle, J.


5